acm

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  02-40140-01-JAR |
| | ) | 04-3123-JAR |
| CLINTON ODELL WEIDNER, II, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255

Defendant/Petitioner Clinton Odell Weidner, II, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (Doc. 259.)  Petitioner maintains his innocence and argues that his counsel was ineffective for three reasons: (1) his attorneys induced petitioner to plead guilty to two Counts before proceeding to trial on the remaining Counts of the Superseding Indictment; (2) his attorneys did not call certain witnesses to testify on behalf of petitioner's defense at trial; and (3) counsels' performance was impaired by a conflict of interest. The government has filed a response.  After reviewing the parties' filings, the Court is now prepared to rule.  For the reasons stated below, defendant's motion for habeas relief is denied.

### I.    Procedural Background

Petitioner was charged in a seven-count Superseding Indictment for acts stemming from an extension of credit he made as the President of Capital City Bank to his co-defendant, David C. Wittig.  On the morning of June 30, 2003, the day petitioner's trial was scheduled to begin,

petitioner informed the Court that he wished to plead nolo contendere to Counts 3 and 4 of the Superseding Indictment while proceeding to trial on the remaining Counts.  The government orally opposed the petition to plea.  Analyzing petitioner's request under Fed. R. Crim. P. 11, the Court found that it was not in the interests of justice to accept petitioner's nolo contendere plea because the plea would still necessitate a trial on the other Counts of the Superseding Indictment and because the Counts were interrelated so that the evidence presented during the trial would be the same whether the Court accepted the plea or not.  For these reasons, the Court denied the petition to enter a nolo contendere plea.

Petitioner's counsel then moved to amend the plea from a nolo contendere plea to a guilty plea, which the Court agreed to entertain.  The Court then conducted petitioner's Fed. R. Crim. P. 11 plea colloquy.  The Court asked petitioner if he had received a copy of the Superseding Indictment.  Petitioner answered, "Yes."  The Court asked whether he had discussed the charges within the Superseding Indictment with his counsel.  Petitioner responded, "Yes, I have. Extensively."  Petitioner agreed with the Court that he had no questions about the nature of the charges.  The Court then asked petitioner if he was willing to enter of plea of guilty to Counts 3 and 4 of the Superseding Indictment.  To this question, petitioner voluntarily responded, "Yes, Your Honor.  I am doing this freely, voluntarily, knowingly."  The Court asked if it was petitioner's decision to enter the guilty plea.  He answered, "That is correct."  In response to the Court's question asking petitioner if he felt that he had the full advice of counsel to make an informed decision to enter the guilty plea, he responded, "Yes.  Completely."  He further stated that "absolutely" no one had made any promises or assurances to him in an effort to induce him to plead guilty.  Additionally, petitioner stated that he had discussed with his counsel the possible penalties he could face after pleading guilty and how the federal sentencing process

works.  He stated that he understood the maximum penalties associated with entering a guilty plea for Counts 3 and 4.  He also stated that he understood the Federal Sentencing Guidelines would apply to his case and that no one could predict what his sentence would be at that time.

The Court then discussed with petitioner the fact that his guilty plea would waive his right to a jury trial on Counts 3 and 4.  The Court noted on the record that petitioner was a licensed attorney at that time and assumed that he understood his right to a jury trial. Nevertheless, the Court asked if he understood that he was waiving the right to a jury trial where he would have the presumption of innocence and the government would be required to meet its burden of proving beyond a reasonable doubt that petitioner committed the acts for which he was charged.  Petitioner responded, "Yes, Your Honor, thank you."  The Court also warned petitioner that once he pleaded guilty, he would be adjudicated guilty of a felony conviction, and the government would be able to introduce the conviction for impeachment purposes at the trial on the remaining Counts against petitioner.  Petitioner responded, "I understand.  He can try."

Next, the Court asked the government to provide a factual basis for the plea, but the government refused because it believed that petitioner's plea was a tactical move to assist his co-defendant.  The government requested that petitioner provide the factual basis, and the Court agreed that having petitioner state the basis for the plea would be a better alternative.  First, petitioner stated that he wanted the Court to understand that his co-defendant was not involved in the acts that led to the Counts to which petitioner was pleading guilty.  He said, "I did these things that were stated.  Mr. Wittig had no knowledge of it.  He was not involved in my decisions to do what I did.  This is the right thing to do."  Next, petitioner provided the factual basis for Count 3, charging him with violation of 18 U.S.C. § 1005 for responding falsely on an officer's questionnaire by failing to state that he had given his co-defendant an extension of

3

credit.  Petitioner agreed with the Court that his response to the questionnaire was a false

representation because he failed to state that he had given an extension of credit to Mr. Wittig.

Petitioner stated, "That is correct, Your Honor.  I had a separate promissory note with Mr. Wittig

on–that I did not declare on that statement."  The Court asked petitioner if by responding falsely

to the questionnaire, he intended to deceive either an officer of Capital City Bank or to deceive

an FDIC agent or examiner.  Petitioner answered, "That is correct."

Then, the Court asked for the factual basis for Count 4, charging him with violation of 18

U.S.C. § 1005 for failing to reveal on his Personal Financial Statement petitioner's loan from

Mr. Wittig, the proceeds of which were obtained from petitioner's extension to increase Mr.

Wittig's line of credit at Capital City Bank.  Petitioner, himself, made the following statement on

the record to support the factual basis for his plea:

> Personal financial statement that I dated and handed in on May 1st
> 2001, and on that financial statement that I submitted to Capital City
> Bank or board of directors, I should have disclosed the fact that I had
> a loan with Mr. Wittig and I did not do that.  I had a loan dated May
> 1st with Mr. Wittig and I submitted my statement on May 1st and did
> not include that loan, Your Honor, on the statement.

The Court then asked if he did this with the intent to deceive either an officer of the bank or an

FDIC agent or the bank examiner, and petitioner responded, "Yes."

Finally, the Court asked petitioner if he had reviewed the Petition to Enter Plea with his

counsel and if he understood the purpose, intent, and language in the petition.  Petitioner

answered, "Yes, I do.  Clearly."  At that point, petitioner signed the Petition to Enter Plea.  The

Petition to Enter Plea attests that the plea was made freely and voluntarily and that it "is not the

result of any force or threats against [him], or of any promises made to [him] other than those

noted in this petition."

The Court asked petitioner how he wished to plead to Counts 3 and 4 of the Superseding Indictment, and petitioner answered, "Your Honor, I plead guilty."  After stating on the record that the Court finds "that the plea was a knowing and voluntary plea supported by an independent basis in fact that contains each of the essential elements of the offense," the Court accepted petitioner's plea.  Afterwards, petitioner proceeded to trial on the remaining Counts against him.  On July 14, 2003, the jury found petitioner guilty of Counts 1, 2, 5 and 6 of the Superseding Indictment.[1]

Petitioner's sentencing hearing was held on February 26, 2004.  At this hearing, the government objected to the Presentence Investigation Report (PSIR) because it did not include a two-level enhancement for obstruction.  The government contended that petitioner had not truthfully disclosed all of his assets to the probation officer conducting the presentence investigation.  Petitioner then took the witness stand and refuted the government's assertion that he was hiding his assets.  During cross-examination, counsel for the government showed petitioner a document that indicated that petitioner owned a luxury automobile that he had failed to disclose to the probation officer.  Petitioner then admitted that he owned this automobile, that he had failed to disclose his ownership to the probation officer, and that he lied about owning this automobile just a few moments earlier during his direct testimony.  Petitioner then stated on the record that he had lied under oath during his direct examination.

At the conclusion of the hearing, the Court assigned petitioner an offense level of 28, including a two-level increase for obstruction, with a criminal history category of I.  Under the United States Sentencing Guideline ("Guidelines"), the applicable sentencing range was 78-97

---

[1]The seventh Count in the Superseding Indictment was a forfeiture count.  On July 14, 2003, the jury returned a special verdict form finding that certain real property was subject to forfeiture.  The Court imposed this forfeiture sentence at the sentencing hearing on February 26, 2004.

months.  The Court sentenced petitioner to 78 months imprisonment.  Petitioner now asks this Court to vacate his sentence, asserting that his counsel was ineffective.  Counsel that petitioner now accuses of ineffective assistance represented petitioner at the time he entered his plea, during the trial, and after the trial when petitioner filed appeals that are still pending with the Tenth Circuit.[2]  When petitioner filed this habeas motion asserting ineffective assistance, his counsel filed a Motion to Withdraw as attorney.  (Doc. 262.)  The Court granted counsels' request.  (Doc. 263.)  Petitioner is now represented by different counsel in this habeas action.[3]

## II.   Analysis

28 U.S.C. § 2255 requires the Court to conduct an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[4]  The Court determines that the motion and files of this case are conclusive in showing that this petitioner is not entitled to relief for his claims of ineffective assistance asserted in his motion.

In order to succeed on a claim of ineffective assistance of counsel, petitioner must meet the two-prong test set forth in *Strickland v. Washington*.[5]  Under that test, petitioner must first show that counsels' performance was deficient because it "fell below an objective standard of reasonableness."[6]  Second, he must show that counsels' deficient performance actually

---

[2]Petitioner's claim concerns counsel Pedro L. Irigonegaray, Robert V. Eye, and Elizabeth R. Herbert, who entered their appearances in the criminal proceeding on November 21, 2002.  (Doc. 12.)

[3]Petitioner is now represented by Bruce W. Simon, who signed petitioner's § 2255 motion that was filed on April 20, 2004.  (Doc. 259.)

[4]*United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000), *cert. denied*, 532 U.S. 943 (2001) (internal quotation and citation omitted).

[5]466 U.S. 668 (1984).

[6]*Id.* at 688.

prejudiced his defense.[7]  "In the context of a guilty plea, the prejudice prong requires a defendant to show that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[8]  Petitioner advances three arguments as to why his counsel was ineffective. The Court will address each one in turn.

### A.      Coercion of Petitioner's Plea

Petitioner first claims that his counsel was ineffective because counsel coerced him into pleading guilty to Counts 3 and 4 of the Superseding Indictment before proceeding to trial on the remaining Counts.  However, the record of this case conclusively shows that petitioner, who was a licensed attorney at the time of his plea, voluntarily entered his guilty plea.  It is clear from the record that petitioner's counsel advised him of the consequences of pleading guilty and petitioner entered his plea armed with the information necessary to make a voluntary decision. Further, the record reveals that counsels' advice to plead guilty did not amount to ineffective assistance when it was a tactical decision designed to assist petitioner's case.  Thus, petitioner cannot succeed on his claim of coercion.

### 1.      Voluntariness of Petitioner's Plea

"[C]oercion by the accused's counsel can render a plea involuntary."[9]  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"[10]  "A plea may

---

[7]*Id.* at 692.

[8]*United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

[9]*United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir.1988).

[10]*Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *N.C. v. Alford*, 400 U.S. 25, 31 (1970)).

be involuntary when an attorney materially misinforms the defendant of the consequences of the plea."[11]  Here, petitioner's plea was voluntarily entered, and he was not misinformed of the consequences.

Petitioner's assertions at his Fed. R. Crim. P. 11 plea colloquy establish that he voluntarily entered his guilty plea.  When the Court asked petitioner if he was willing to plead guilty to these Counts, he *voluntarily* responded "Yes, Your Honor.  I am doing this freely, voluntarily, knowingly."  In fact, he *twice* stated on the record that his decision was voluntary. He also stated that "absolutely" no one made any promises or assurances to him in an effort to induce him into entering the plea.  Additionally, petitioner signed a Petition to Enter Plea that states that he was offering his plea freely and voluntarily.  It further states that his guilty plea was not the result of any force or threat against him or any promises made to him other than those in the petition.

In an affidavit attached to the government's response, one of petitioner's former counsel explains the process petitioner went through before entering his plea.[12]  While petitioner asserts that he was pressured to plead guilty the morning of trial, counsel states that, several days before trial, his attorneys suggested to petitioner that it would be in his best interest to plead guilty to Counts 3 and 4.  Counsel states that petitioner's attorneys always advised him that it was his decision to make and his alone.  Further, counsel encouraged petitioner to receive advice from friends.  Counsel met with Eric (Rick) Johnson, a friend of petitioner's and also an attorney, to discuss the proposed plea.  Mr. Johnson agreed with petitioner's attorneys that this was his best

---

[11]*United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir. 1990).

[12]*See* (Doc. 275, Attach. 1 at 2-3) (signed affidavit by one of petitioner's former counsel, Pedro L. Irigonegaray).

8

choice under the circumstances.  Two days before trial, petitioner called his attorneys and informed them of his decision to plead guilty.  Counsel denies improperly pressuring defendant to plead guilty.  Counsel advised petitioner that if he decided not to plead guilty to Counts 3 and 4, then his attorneys were ready to proceed to trial on all of the Counts and force the government to meet its burden of proof.  Based on his discussions with petitioner before trial, counsel believes that petitioner "intelligently, voluntarily, and knowingly" accepted the advice to plead guilty to Counts 3 and 4.

Petitioner was also adequately informed by his counsel of the consequences of entering the guilty plea.  During the plea colloquy, the Court asked petitioner if he felt that he had the full advice from counsel to make an informed decision to enter the plea.  He responded, "Yes, completely."  Petitioner also stated that he had discussed with his counsel the possible penalties he could face after pleading guilty.  Further, petitioner signed a Petition to Enter Plea that stated that he believes that his attorneys had done all that anyone could do to counsel and assist him and that he is satisfied with the advice and help his attorneys have given him.

Petitioner also asserts that he believes he is innocent of any criminal violations connected with his extension of credit to co-defendant Wittig because he is not guilty of "knowingly" violating the law.  However, his statements made to the Court during the plea colloquy show otherwise.  Rather than the government offering the factual basis, petitioner, himself, provided the factual basis for his plea.  First, petitioner went out of his way to make it clear to the Court that his co-defendant was not involved in the acts to which petitioner was pleading guilty. Petitioner admitted committing the acts, denied Mr. Wittig was involved or had knowledge of his acts, and stated that pleading guilty to these Counts was "the right thing to do."  Petitioner then provided the factual basis to both Counts 3 and 4.  For each Count, the Court asked petitioner if

9

he had committed the acts with the intent to deceive either an officer of the bank, an FDIC agent or the bank examiner.  To both Counts, petitioner responded in the affirmative.  Further, the PSIR supports the fact that petitioner knowingly committed the acts to which he voluntarily pleaded guilty.  When petitioner met with the probation officer for the pre-sentence investigation, he again affirmed the voluntariness of his plea and accepted responsibility for Counts 3 and 4.  Based on petitioner's statements at the plea hearing and his statements in the PSIR, the record does not support petitioner's claim of innocence.[13]

In sum, petitioner's answers during the plea colloquy conducted by this Court on the record, along with the language of his Petition to Enter Plea and the statements in the PSIR, show that he was informed as to the implications of pleading guilty and that he voluntarily decided to enter the guilty plea.  Petitioner is "bound by his solemn declarations in open court," which contradict the statements in his brief.[14]  Because petitioner's allegations of coercion fail to show that he was forced into entering his guilty plea, his claim for habeas relief must be denied.

### 2.      Ineffective Assistance Resulting in Petitioner's Plea

To the extent petitioner complains of ineffective assistance regarding counsels' advice as to the results of the plea, this claim fails as well.  The Tenth Circuit has stated that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[15]  "Because of the difficulties

---

[13]*See United States v. Hollingsworth*, 94 Fed. Appx. 743, 745 (10th Cir. 2004) (denying defendant's request to withdraw guilty plea based on assertion of innocence when petitioner stated on the record that "I have done what they are accusing me of.").

[14]*Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996), *cert. denied*, 519 U.S. 998 (1996).

[15]*Fields v. Gibson*, 277 F.3d 1203, 1216 (10th Cir. 2002).

inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[16]

As the government states in its response to petitioner's motion, counsels' strategy in advising petitioner to plead guilty to Counts 3 and 4 would have been a "brilliant tactic" had it worked. In an affidavit attached to the government's response, one of petitioner's former counsel explained the strategy.[17] Several days before trial, petitioner's attorneys suggested that it may be in petitioner's best interest to plead guilty to Counts 3 and 4. Based on the facts that petitioner had already admitted, counsel determined that there was no defense to these Counts. Counsel reasoned that by pleading guilty, petitioner could earn credibility with the jury that could result in an acquittal on the remaining Counts. Additionally, these two Counts were not predicates for forfeiture purposes, meaning that petitioner would not have to forfeit the investment he made from his loan from co-defendant Wittig. Counsel advised petitioner that it was a "high risk strategy," but it was the strategy that they recommended.

Further, petitioner, who was a licensed attorney at that time, discussed the proposed strategy with Mr. Johnson, an attorney friend. Mr. Johnson visited with petitioner and his attorneys two days before trial. Counsel explained the proposed strategy to Mr. Johnson. Mr. Johnson appeared to understand the strategy, and he agreed with counsel that it was petitioner's best choice under the circumstances.

Based on these facts, petitioner cannot overcome the strong presumption that counsels'

---

[16]*Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

[17](Doc. 275, Attach. 1 at 2.)

conduct falls within the wide range of reasonable professional assistance.  While counsels'
strategy was a risky strategy, it was sound legal advice that was not deficient under the
*Strickland* standard.  Further, petitioner followed this strategy after seeking the advice of Mr.
Johnson, an attorney, who reviewed and understood this trial strategy.  Mr. Johnson agreed that
it was petitioner's best option.  Moreover, petitioner voluntarily followed counsels' strategy after
counsel advised petitioner of the results of such a plea.  The Petition to Enter Plea and
petitioner's statements in open court at the plea colloquy all support the fact that petitioner
voluntarily entered the plea and understood the actual and potential consequences of following
this strategy.  Therefore, because petitioner's attorneys were not ineffective in advising
petitioner to plead guilty to Counts 3 and 4, petitioner's claim for habeas relief must be denied
on this ground.

### B.       *Failure to Call Witnesses*

Petitioner argues that counsels' failure to call certain witnesses at trial amounted to
ineffective assistance.  As previously noted, to establish ineffective assistance of counsel,
petitioner must show his counsels' performance was constitutionally deficient and petitioner was
prejudiced by the deficiency.[18]  To prove his counsels' performance was constitutionally
deficient, petitioner must demonstrate his counsel "committed serious errors in light of
prevailing professional norms such that his legal representation fell below an objective standard
of reasonableness."[19]  Petitioner claims that counsels' decision not to call certain witnesses was
unreasonable.  However, in the affidavit attached to the government's response, one of

---

[18]*Strickland*, 466 U.S. at 694.

[19]*Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) (quotation marks and citations omitted), *cert. denied*, 529 U.S. 1027 (2000).

petitioner's former counsel explains that these witnesses were not called during petitioner's case because counsel had determined that the testimony of such witnesses would either be immaterial, inadmissible, or even damaging to petitioner's case.[20]  As previously discussed, in evaluating petitioner's claims, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[21]

Petitioner asserts that he requested his counsel to call Frank Sabatini, the owner of Capital City Bank, but counsel refused to do so.  "Whether to call a particular witness is a tactical decision and, thus, a matter of discretion for trial counsel."[22]  In this case, counsel feared that Mr. Sabatini could have offered damaging testimony on cross-examination.  According to his affidavit, petitioner's former attorney interviewed Mr. Sabatini and considered calling him as a witness.  However, counsel determined that petitioner could introduce the information that Mr. Sabatini would provide through other defense witnesses.  Further, counsel advised petitioner that they should not call Mr. Sabatini because he would have testified on the government's cross-examination that the loan from co-defendant Wittig to petitioner required that a suspicious activity report be filed with the FDIC because the loan was subject to a mandatory reporting requirement.  Counsel cautioned petitioner that although Mr. Sabatini could provide valuable character evidence for petitioner, counsel believed it was too risky to call this witness in petitioner's case in chief.  Given that Mr. Sabatini could have offered harmful testimony to

---

[20](Doc. 275, Attach. 1 at 3-4.)

[21]*Fields*, 277 F.3d at 1216 (citing *Strickland*, 466 U.S. at 689).

[22]*United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986) (citations omitted).

petitioner's case, counsel could have reasonably determined that the damaging testimony that could be elicited from Mr. Sabatini on cross-examination outweighed the benefit of testimony he would give during direct examination.  Thus, counsels' tactical decision to keep Mr. Sabatini from testifying was not unreasonable under the *Strickland* standard.

Petitioner also complains that counsel did not call Professor Steven Ramirez, a Washburn University Law Professor, to testify regarding his belief that petitioner's actions did not violate the law.  As petitioner's former counsel explains in his affidavit, Professor Ramirez was not called for several reasons.  First, counsel doubted the admissibility of his testimony because petitioner had retained Professor Ramirez for advice relating to his employment with Capital City Bank.  Second, his testimony would be subject to substantial impeachment based on his testimony before the grand jury.  Professor Ramirez testified before the grand jury that he had not reviewed any of the documents relating to the case but that he had formed his opinions that petitioner had not violated the law based only on his conversations with petitioner about the acts that petitioner had committed.  Moreover, Professor Ramirez expertise was questionable, in that he told counsel that his experience was in FDIC regulations and not criminal law. Third, Professor Ramirez's testimony could have been damaging in that he would have testified that petitioner should have included the loan from co-defendant Wittig in his Personal Financial Statement.  Finally, Professor Ramirez was not a cooperative witness.   Afer petitioner was indicted, Professor Ramirez told counsel that did not wish to have anything further to do with the case.  According to former counsel, petitioner knew all of this information and he concurred in the decision not to call Professor Ramirez because he would not be a helpful witness for petitioner's case.

Petitioner also asserts that counsel was ineffective in failing to call Jack McGovern as a

14

witness.  Mr. McGovern was also interviewed by petitioner's former counsel.  According to the affidavit attached to the government's response, counsel did not believe Mr. McGovern was in possession of information relevant to petitioner's charges.  Therefore, his testimony would be immaterial or irrelevant.  Given that this testimony would not greatly assist petitioner's case, counsels' decision not to call Mr. McGovern as a witness was not unreasonable.  The decision not to call these witnesses was based on sound strategy in that the witnesses would provide immaterial or damaging testimony.  The strong presumption that counsel provided effective assistance easily overcomes petitioner's assertions that these certain witnesses should have testified at his trial.  Because counsels' decision not to call these witnesses falls within the "wide range" of reasonableness under *Strickland*, petitioner is not entitled to relief on this ground.

### C.        Conflict of Interest

Finally, petitioner claims that counsels' advice to petitioner to plead guilty and counsels' decision not to call Mr. Sabatini, the owner of Capital City Bank, as a witness for petitioner was the result of a conflict of interest between counsel and the bank.  "It is clear that the right to counsel guaranteed by the Sixth Amendment includes the 'right to representation that is free from conflicts of interest.'"[23]  When a defendant fails to raise a Sixth Amendment objection at trial, he must demonstrate "'that an actual conflict of interest adversely affected his lawyer's performance.'"[24]  The standard for determining whether "defense counsel's performance was adversely affected by an actual conflict of interest" is met "if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in

---

[23]*United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).

[24]*Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

conflict with his duties to others or to his own personal interests."[25]

Petitioner fails to support this serious allegation in his motion. Instead, he merely speculates that counsel "may have been motivated in part" by counsels' continuing relationship with the bank in advising him to enter his guilty plea. He provides no specific evidence to support this claim, nor has he shown that counsels' advice discouraging Mr. Sabatini's testimony at trial was the result of a conflict of interest. As shown above, counsels' advice was motivated by the fact that Mr. Sabatini's cross-examination could result in damaging testimony against petitioner's case. There is no evidence to the contrary. Therefore, petitioner's ineffective assistance claim based on counsels' conflict of interest must fail as well.

**III.    Conclusion**

For all these reasons, the motions and files of this case are conclusive in showing that this petitioner is not entitled to relief for his ineffective assistance claims. Because his three ineffective assistance arguments fail, the Court denies petitioner's motion for habeas relief.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 259) is **DENIED**.

IT IS SO ORDERED.

Dated this 2nd day of December 2005.

 S/ Julie A. Robinson
**JULIE A. ROBINSON**

---

[25]*Id.* (citations omitted).

**UNITED STATES DISTRICT JUDGE**